**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GERALD BRENT HARRIS,<br><br>Petitioner,<br><br>v.<br><br>SCOTT FRAUENHEIM,<br><br>Respondent. | Case No. 1:19-cv-01203-JLT-SAB-HC<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATION, DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS, AND REFERRING MATTER BACK TO MAGISTRATE JUDGE FOR EVIDENTIARY HEARING**<br><br>**(Doc. 35)** |

On December 21, 2021, the assigned magistrate judge issued findings and that an evidentiary hearing be held on Petitioner's ineffective assistance of counsel claim related to defense counsel's alleged failure to file a notice of appeal (hereinafter referenced as the "notice of appeal IAC claim") from a resentencing proceeding held pursuant to California Senate Bill 620 ("SB 620") and that the remaining claims in the petition be denied. (Doc. 35.) Respondent filed timely objections, challenging only the recommendation to hold an evidentiary hearing on the notice of appeal IAC claim. (Doc. 37.) Although Petitioner was granted an extension of time to file a reply to Respondent's objections, he did not do so, and the time for doing so has passed.

According to 28 U.S.C. § 636(b)(1)(C), the Court conducted a *de novo* review of the case. Having carefully reviewed the entire file as to all claims, including Respondent's objections, the Court adopts the findings and recommendations in full. Nonetheless, the Court finds it appropriate to address Respondent's objections in some detail. *See Mays v. Hines*, 141 S. Ct. 1145, 1149, *reh'g denied*, 141 S. Ct. 2693 (2021) (noting that "there is no way to hold that a

1

decision was 'lacking in justification' without identifying—let alone rebutting—all of the justifications").

The standard of decision applicable to motions filed under § 2254 is set forth in § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—"
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See also Harrington v. Richter*, 562 U.S. 86, 97–98 (2011).

As the findings and recommendations correctly explain, Petitioner raised his notice of appeal IAC claim in his state habeas petition filed in the California Supreme Court. (Doc. 35 at 29 (citing record).) The California Supreme Court summarily denied the petition. (*Id.*) Although there is no reasoned state court decision addressing this claim, the findings and recommendations correctly presumed that the state court adjudicated the claim on the merits. (*Id.* (citing *Johnson v. Williams*, 568 U.S. 289, 301 (2013)).) The Court's role under such circumstances is to "determine what arguments or theories. . . could have supported, the state court's decision; and then . . . ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." (*Id.* at 30 (citing *Harrington*, 562 U.S. at 102).)

*Strickland v. Washington*, 466 U.S. 668 (1984), is the starting point for understanding the clearly established federal standard governing ineffective assistance of counsel claims. Under *Strickland*, a petitioner must first demonstrate that counsel's performance was deficient, which requires a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must show that the deficient performance prejudiced the defense. *Id.*

1       A line of Supreme Court cases has applied *Strickland* in the context of the failure to file a
2  notice of appeal. The key case for purposes of the present analysis is *Roe v. Flores-Ortega*, 528
3  U.S. 470, 477 (2000), in which the defendant pled guilty to second-degree murder charges in
4  California state court. *Id*. at 473. After pronouncing sentence, the trial judge informed Flores-
5  Ortega of his right to file an appeal within sixty days. *Id*. at 474. Although defense counsel wrote
6  "bring appeal papers" in her file, no notice of appeal was filed within the allotted 60 days. *Id*.
7  Approximately four months after entry of judgment, Flores-Ortega tried to file a notice of appeal,
8  which was rejected as untimely by the Fresno County Superior Court Clerk. *Id*.

9       Flores-Ortega eventually filed a habeas petition before the Eastern District of California
10 pursuant to § 2254, bringing, among other things, notice of appeal IAC claim. *Id*. The district
11 court denied the motion, finding that "there was no consent to a failure to file [a notice of
12 appeal]," but that the relevant Ninth Circuit caselaw that would have provided Flores-Ortega
13 relief under those circumstances post-dated his conviction and could not be applied retroactively
14 on collateral review. *Id*. at 474–75. The Ninth Circuit reversed, relying on even older Ninth
15 Circuit case that predated Flores-Ortega's conviction and holding that a habeas petitioner need
16 only show that his counsel's failure to file a notice of appeal was without the petitioner's consent.
17 *Id*. at 476. The Supreme Court granted certiorari, to "resolve a conflict in the lower courts
18 regarding counsel's obligations to file a notice of appeal." *Id*.

19      The Court began by addressing the first *Strickland* prong—deficient performance—
20 explaining that it has "long held that a lawyer who disregards specific instructions from the
21 defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v.*
22 *Flores-Ortega*, 528 U.S. 470, 477 (2000). The Court then articulated a bifurcated standard for
23 deficient performance, with one standard applying to situations in which counsel consults with
24 the defendant, and another applying to situations in which counsel has not engaged in such
25 consultation—as follows:

> In those cases where the defendant neither instructs counsel to file
> an appeal nor asks that an appeal not be taken, we believe the
> question whether counsel has performed deficiently by not filing a
> notice of appeal is best answered by first asking a separate, but
> antecedent, question: whether counsel in fact consulted with the

> defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.
>
> ***
>
> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Flores-Ortega*, 528 U.S. at 478, 480 (citations omitted).

As to the prejudice prong, the Court also articulated a bifurcated standard. In some circumstances, such as where the petitioner argues that counsel failed to make a particular argument on appeal, the defendant is required to show actual prejudice (i.e., a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, the result of the proceeding would have been different). *Id*. at 482. In other circumstances, prejudice is *presumed*, such as "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken." *Id*. at 484.

The Supreme Court applied the presumption-of-prejudice standard to Flores-Ortega's situation, finding that "counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." *Id*. at 483. In other words, counsel's deficient performance deprived Flores-Ortega "of the appellate proceeding altogether." *Id*. To show prejudice in these circumstances, a defendant need only demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

Much more recently, the Supreme Court re-affirmed and elaborated upon *Flores-Ortega*

4

in *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019). There, the Court considered a notice of appeal IAC claim brought by a defendant who had waived the right to collaterally attack his conviction and sentence in a plea agreement. *Id*. at 742. Although the Court acknowledged such a waiver can preclude challenges that fall within its scope, in reality "no appeal waiver serves as an absolute bar to all appellate claims," for a variety of reasons. *Id*. at 747. For example, the language of the waiver can leave some claims outside its reach; the prosecution can forfeit or waive the right to enforce the waiver; and certain kinds of claims, such as those that argue the waiver itself was unknowing or involuntary, cannot be waived. *Id*. at 744–75. Because *Garza* "retained a right to appeal at least some issues despite the waivers he signed . . . *Garza* had a right to a proceeding, and he was denied that proceeding altogether as a result of counsel's deficient performance." *Id*. at 747. The Court specifically rejected the proposition that a defendant in Garza's position should have to "show on a case-specific basis, either (1) that he in fact requested, or at least expressed interest in, an appeal on a non-waived issue, or, alternative, (2) that there were nonfrivolous grounds for appeal despite the waiver." *Id*. at 748 (internal quotations and citations omitted). The Court found such a proposal "unworkable" because "it would be difficult and time consuming for a postconviction court to determine—perhaps years later—what appellate claims a defendant was contemplating at the time of conviction," particularly given that most postconviction petitioners proceed pro se, making it more difficult for a court to engage in the proposed case-by-case analysis. *Id*. at 749. The Court explained that:

> The more administrable and workable rule, rather, is the one compelled by our precedent: When counsel's deficient performance forfeits an appeal that a defendant otherwise would have taken, the defendant gets a new opportunity to appeal. That is the rule already in use in 8 of the 10 Federal Circuits to have considered the question, and neither Idaho nor its *amici* have pointed us to any evidence that it has proved unmanageable there. That rule does no more than restore the status quo that existed before counsel's deficient performance forfeited the appeal, and it allows an appellate court to consider the appeal as that court otherwise would have done—on direct review, and assisted by counsel's briefing.

*Id*. (internal citations omitted)

Citing *Flores-Ortega* and *Garza*, the findings and recommendations concluded it would be unreasonable determination of the facts under § 2254(d)(2) to find that Petitioner did not

1 instruct counsel to file a notice of appeal. (Doc. 35 at 30–33.) In other words, the magistrate judge
2 concluded the *only reasonable way* to interpret the facts was to find that Petitioner instructed
3 counsel to file a notice of appeal. Relatedly, and based upon that factual finding, the magistrate
4 judge concluded that it would be objectively unreasonable to find that Petitioner did not establish
5 prejudice as a matter of law because, "prejudice is presumed when an attorney fails to file an
6 appeal against the petitioner's express wishes." (Doc. 35 at 33; *see also id*. at 30 (citing *Garza*,
7 139 S. Ct. at 744).)

8 Respondent's objections assume for the sake of argument that the magistrate judge
9 concluded correctly that Petitioner instructed his lawyer to file a notice of appeal; the objections
10 focus instead on the magistrate judge's prejudice conclusion. (*See* Doc. 37 at 7.) Respondent
11 argues, in essence, the presumption of prejudice articulated in *Flores-Ortega* does not dictate the
12 outcome here because California provides defendants a procedural mechanism for re-opening the
13 time to file a notice of appeal, so long as that mechanism is invoked with diligence. (*See id*. at 3–
14 4.)

15 Respondent's objections rely heavily on *Canales v. Roe*, 151 F.3d 1226, 1230 (9th Cir.
16 1998), a case that pre-dates *Flores-Ortega*. The petitioner in *Canales* was convicted of murder in
17 California state court. *Id*. at 1227. His trial counsel attempted to appeal the conviction but filed
18 the notice of appeal two days late. *Id*. Shortly thereafter, the state court sent Canales a letter
19 indicating that his appeal was not timely filed and directing him to seek relief from the California
20 Court of Appeal pursuant to established state law process that provides an avenue for appellate
21 rights to be restored if a defendant acts in a timely fashion. *Id*. at 1228, 1230. A few months later,
22 the state court provided him with another notice of his right to seek relief from the late-filed
23 appeal. *Id*. at 1228. Canales attempted to file for that form of relief, but not until eighteen months
24 after the time to file a notice of appeal had lapsed. *Id*. Canales eventually brought a § 2254
25 petition in federal court. *Id*.

26 In examining how *Strickland* would apply to Canales' situation, the Ninth Circuit
27 anticipated that a presumption of prejudice might become clearly established Supreme Court law
28 and assumed without deciding that such a rule was in place. *See id*. at 1229–30. Even assuming as

6

much, the Ninth Circuit explained such a rule would not be dispositive of Canales' case because "in a state that affords the defendant an avenue of relief, it would be too simplistic to state baldly that a 'case-by-case inquiry into prejudice is not worth the cost.'" *Id*. at 1230 (citing *Strickland*, 466 U.S. at 692). Ninth Circuit indicated that it could not conclude that "the loss of Canales' appeal rights was entirely without his consent." *Id*. The Ninth Circuit reasoned:

> California provides an avenue of relief for a defendant whose counsel has filed a late notice of appeal. It has, time and time again, declared that the loss of appeal rights can easily be remedied where counsel has erred. *See, e.g., In re Benoit*, 10 Cal. 3d 72, 85–89 (1973); *People v. Sanchez*, 1 Cal. 3d 496, 500–01 (1969); *People v. Tucker*, 61 Cal. 2d 828, 831–32 (1964). The defendant need only act in a timely fashion. *See, e.g., In re Clark*, 5 Cal. 4th 750, 764–65 (1993). Here the state trial court notified Canales of the untimeliness of his appeal and directed him toward a potential avenue of relief, but he, as the state courts determined, failed to follow that direction. Ultimately, it cannot be said that inadequate performance by counsel denied him the right to an appeal.
>
> To put it yet another way, even if a claim of ineffective assistance of counsel does not require any showing of probable success on issues that could be raised on appeal, that is not the end of the analysis. The question is really whether counsel's failure to timely file is what deprived Canales of his appeal in the courts of California. We made a similar point in *Katz*, 920 F.2d at 612–13. There counsel had failed to perfect the appeal, but Katz had fled the jurisdiction. *Id*. at 611. When he was recaptured, he sought to revive the appeal and asserted that counsel was ineffective. We said:
>
>> We conclude that Katz did not make the showings Strickland requires. Even if we assume the failure to perfect an appeal is an act outside the range of reasonably competent counsel, Katz has failed to show prejudice. If Katz's attorney had perfected his 1971 appeal, as pointed out earlier, the appeal would have been dismissed on the ground of the *Molinaro* disentitlement doctrine. Thus, Katz can show no prejudice.
>
> *Id*. at 613 (footnote omitted). So it is with Canales.
>
> Again, California provides a method for filing a belated notice of appeal. A defendant must, however, satisfactorily explain his delay in filing the request. Here Canales was told within a few days of counsel's presumed timing error that his notice of appeal had been filed too late, but that he could seek relief from the California Court of Appeal. Five months later he was told again and was even given the address of the Court of Appeal. Yet he did nothing until eighteen months after the first notice. Thus, his appeal rights were lost. In other words, his lack of a California appeal process was based on his failure to satisfactorily explain his delay in asking for

> it, and not on the nature of the issues he would have raised on appeal.
>
> No Supreme Court or other federal case has held that, despite an available delayed appeal procedure like that in California, the Constitution requires that a defendant be given a right to proceed with an appeal as long after counsel's error as he wishes. Certainly, clearly established Supreme Court law does not do so. Thus, Canales is not entitled to relief under the revised habeas corpus statute. *See* 28 U.S.C. § 2254(d).

*Canales*, 151 F.3d at 1230–3.

Drawing upon the logic expressed in *Canales*, Respondent contends that a fairminded jurist could have concluded in the present case that Petitioner's delay in seeking relief from counsel's error—not counsel's error itself—ultimately caused the loss of the right to appeal. (*See* Doc. 37 at 7.) Respondent correctly points out, (Doc. 2 at 22), that Petitioner's appeal from his November 1, 2018 re-sentencing under SB 620 was due within 60 days of that date (i.e., on or about December 31, 2018). (*See* Doc. 26-20 (resentencing minutes).) The record appears to reflect that Petitioner did not attempt to remedy the late filing in any way for approximately 8 months, until August 28, 2019, when he filed his first state habeas petition. (*See* Doc. 26-21 at 92 (first state habeas petition served Aug. 28, 2019); *see also id*. at 27 (letter from Petitioner to trial counsel sent Aug. 28, 2019).)

The findings and recommendations indicate it is unclear whether *Canales* was abrogated by *Flores-Ortega*, instead reasoning that *Canales* can be distinguished from the present case on the facts. (Doc. 35 at 34.) The Court also finds it unnecessary at this stage of the proceedings to definitively determine whether *Canales* is still good law. Assuming it is, the present case appears to be distinguishable. In *Canales*, the defendant was notified that the notice of appeal filed by counsel was deficient almost immediately after the deadline to file the appeal lapsed, yet he took no further action for approximately 18 months. *Canales*, 151 F.3d at 1230–3. Here, though there was a lapse of approximately eight months between the appeal notice deadline and the first action by Petitioner to pursue his appellate rights independently, nothing suggests that any court gave Petitioner any warning that his appeal from the SB 620 re-sentencing had not been properly perfected.

This is a distinction that is underscored by one of the only post-*Flores-Ortega* cases to rely on *Canales*: *Garcia v. Foulk*, No. 1:14-cv-00461-AWI-SKO-HC, 2015 WL 6689651, at *4 (E.D. Cal. Oct. 28, 2015). In *Garcia* a California Court of Appeal granted the petitioner habeas relief based upon his trial attorney's failure to file a notice of appeal and permitted him leave to file a notice of appeal on or before a date certain, yet the petitioner "inexplicably . . . failed to file a notice of appeal within the time period that the Court of Appeals provided to him." The California Court of Appeal later rejected the petitioner's request for relief under the constructive filing doctrine because he failed to file a notice of appeal on or before the new deadline and failed to make an adequate showing that he relied on counsel to timely file it on his behalf. *See id.* (reviewing state court record). Citing *Canales*, this Court found the state court's conclusion to be a reasonable application of federal law because "[w]hen a defendant fails to follow the path to relief mapped out for him by the state court, 'it cannot be said that inadequate performance by counsel denied him the right to an appeal.'" *Id.* Again, the facts presented here are different, as no "path to relief" was mapped out for Petitioner in state court.

Respondent's objections suggest this is a distinction without a difference by arguing it would be reasonable for a jurist to deny habeas relief to a petitioner who failed to act with diligence to <u>discover</u> whether his attorney had indeed filed a notice of appeal as instructed. But such a rule would seems contrary to the reasoning in *Garza* (which pre-dated the state court's summary habeas ruling in this case), which directly rejected an approach that would require a "case-by-case" analysis of the record, albeit under somewhat different circumstances. The undersigned stops short of definitively determining how *Flores-Ortega, Garza*, and *Canales* would apply to the facts of this case, because doing so may not be necessary depending on the outcome of the deficient performance analysis.[1] The Court agrees with the magistrate judge that an evidentiary hearing is required to properly evaluate the deficient performance issue.[2]

---

[1] Depending on the outcome of the evidentiary hearing ordered herein, the Court may find it appropriate to entertain additional, focused briefing on this issue.

[2] After finding that prejudice must be presumed under *Flores-Ortega* and *Garza*, the findings and recommendations suggest that an that an evidentiary hearing is mandatory here. (Doc. 35 at 36 (indicating that an evidentiary hearing is mandatory if the petitioner has met the requirements of Townsend v. Sain, 372 U.S. 293, 212 (1963), and the allegations, if true, "**would** entitle him to relief") (emphasis added).) Although the undersigned stops short of finding

Accordingly, the Court **ORDERS**:

1. The findings and recommendations issued on December 21, 2021 (Doc. 35) are **ADOPTED IN FULL**.
2. The petition for writ of habeas corpus is **DENIED EXCEPT** for petitioner's claim of ineffective assistance of counsel related to the failure to file a notice of appeal.
3. This matter is **REFERRED** to the magistrate judge to conduct an evidentiary hearing on this claim.

IT IS SO ORDERED.

Dated:   **July 8, 2022**

UNITED STATES DISTRICT JUDGE

---

that the allegations would definitely entitle Petitioner to relief, his legal argument is more than colorable, and this Court retains the discretion to order an evidentiary hearing under such circumstances. *See Seidel v. Merkle*, 146 F.3d 750, 754 (9th Cir. 1998); *Flannery v. Walker*, No. 2:10-CV-0950 MCE AC, 2013 WL 3242101, at *3 (E.D. Cal. June 25, 2013); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("Prior to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts. That basic rule has not changed.") (citations omitted).